WILLIAM H. VISAGE, plaintiff in error, *vs.* JOHN D. McKELLAR *et al.*, defendants in error.

Where the transactions between the parties were complicated, and the affidavits in support of the bill and answer respectively were conflicting, the discretion of the chancellor in granting an injunction and appointing a receiver, will not be controlled.

Injunction.  Receiver.  Before Judge HILL.  Bibb County.  At Chambers.  January 18th, 1875.

For the facts, see the decision.

POE, HALL & LOFTON, for plaintiff in error.

J. &. J. C. RUTHERFORD, for defendant.

WARNER, Chief Justice.

On January 3d, 1873, Visage exchanged with McKellar one hundred and one acres of land in Bibb county for four hundred acres in Terrell county.  Visage made McKellar a deed to the Bibb land, and took McKellar's bond for title to Terrel land agreeing to pay twenty bales of cotton as difference in exchange.  Upon this Visage surrendered possession of the Bibb land and moved on that in Terrell county. McKellar put tenants on the Bibb land, and in June, 1873, sold it to Clay for $1,000 00, in two installments of $500 00 each, due, respectively, on 25th day of December, 1873 and 1874, and gave him bond for titles; previously he had procured from Visage another deed to this land, made to him as trustee for his wife, but Clay objecting to treat with him as trustee, he

destroyed this last deed ; afterwards he indorsed and delivered one of Clay's notes to Schofield, and then made Schofield a deed to the Bibb land, and also, as trustee for his wife Tabitha B., made him a deed to six hundred acres of land in Terrell, including therein the four hundred acres bargained to Visage, as he alleges, with the understanding between him and Schofield, that Schofield would convey to Visage and Clay upon compliance with their respective contracts. Visage supposed he was dealing with McKellar, and knew nothing of the land being incumbered with a trust, or of McKellar's want of title, until some time in the following October, when he visited Bibb county, had an interview with McKellar, and endeavored to have the contract rescinded ; that McKellar then informed him that he had no title to the land, that he was insolvent, and had nothing he could reach by going to law ; this is denied, but is proven by Visage's answer and Clay's affidavit. In November or December, Visage abandoned the Terrell county land and came to Bibb and took possession of the land conveyed to McKellar, which was in possession of McKellar's tenants, by force and fraud, and has remained upon it undisturbed during the year 1874 ; alleges in his answer that in December, 18‒3, McKellar agreed to meet him at Macon, January 1st, 1874, when they would mutually surrender papers and cancel the trade ; that they accordingly met, but McKellar excused himself for not complying, saying that Schofield had the papers and would not deliver them to him. This is denied by McKellar. McKellar charges that he could take no steps to oust Visage from the possession of the Bibb county lands because of the title to Schofield, who would not institute proceedings for that purpose, as he desired, to recover the land to his own use, in violation of the trust on which he obtained the deed ; he also stated in one of his affidavits that Schofield had gotten an advantage in the conveyance of the Terrell county land, of which he was endeavoring to avail himself ; alleges Visage's insolvency, and claims possession of the Bibb land and the rents and profits arising therefrom as indemnity for his indorsement and as security

Visage *vs.* McKellar *et al.*

for the collection of Clay's note for $500 00, which he still holds; amends his bill by making his wife a party, and she, together with him, offers to carry out these contracts upon compliance with the terms originally agreed on.

Visage converts his answer into a cross-bill and prayed rescision of the contract. Upon this state of facts, Schofield was enjoined from conveying the Bibb lands and was appointed receiver to take charge of and rent the same from year to year, until the termination of the suit, unless Visage would give bond, with approved security, in the sum of $600 00, within five days, conditioned for the payment of the rent and damages the jury might find against him on the trial, but in the event of his failure to do so then he was to surrender possession to the receiver appointed, etc. To the granting the injunction, and appointing a receiver, Visage excepted. There were several affidavits read on the hearing before the judge in respect to the agreements, and conduct of the respective parties, which appear in the record, and which are very conflicting. In view of the complicated state of the transactions between the parties as well as their conduct in relation thereto, as shown by the original bill and the answer of Visage, in the nature of a cross-bill, as well as the several conflicting affidavits contained in the record, we will not interfere to control the discretion of the court in granting the injunction and appointing a receiver (Visage being insolvent) until the final hearing of the case, in order that the rights and equities of the respective parties may be ascertained and adjusted by the decree of the court. But inasmuch as Schofield has not answered the complainant's bill, neither admitting or denying the manner in which he holds the title to the land conveyed to him by McKellar, we direct that the injunction be enlarged so as to restrain Schofield from conveying the Terrell county land sold by McKellar to Visage, until the final hearing of the case.

Judgment affirmed with directions.